## SILAS ARMSTRONG v. GRANT & PREST.

1. SHERIFF—*Amercement.* A sheriff may, after his term of office has expired, be amerced for official misconduct, whenever a proper case is made therefor.

2. JUDGMENT—*Irregular, who can attack.* A judgment rendered by default on a service of a summons made on the return-day is not void, but is valid until set aside or reversed; and such a judgment, though irregular, can be attacked only by the judgment-debtor, or by his legal representatives, and that only in a direct proceeding instituted for that purpose. (See *Dutton v. Hobson*, ante, p. 196.)

3. AMERCEMENT—*Out-going officer—Special circumstances.* A sheriff who receives a writ of execution about thirty days before his term of office expires, but does not serve the writ, nor return it to the court

from which it was issued, nor deliver the same to his successor in office, cannot be amerced under the statute, unless it is affirmatively shown, by special circumstances, that he was negligent in failing or refusing to commence to execute the writ before his term of office expired.

4. PRACTICE—*Motion—Order.* Proceedings to amerce a sheriff are on a written motion, and not on pleadings; their determination is an order, and not a judgment, and no "special findings" need be made and entered of record.

### Error from Leavenworth District Court.

SILAS ARMSTRONG was sheriff of Wyandotte county for the term ending January 10th, 1870, on which day his successor qualified, and he ceased to be sheriff. On the 4th of December, 1869, judgment was rendered in the district court of Leavenworth county in favor of *Grant & Prest*, against one John Hammill, for $765.14 and $13.00 costs. On the 6th of said December, execution issued on said judgment, directed to *Armstrong*, as sheriff of Wyandotte county, and duly came to his hands. Said *Armstrong* did not execute or return said execution, nor deliver it to his successor. On the 26th of September, 1870, a motion was filed by *Grant & Prest*, as provided by § 472, civil code, to amerce said *Armstrong* for the reasons, 1st, that he neglected to execute said writ, and 2d, that he neglected to return said writ. Notice of the hearing of said motion was given to plaintiff in error, personally, as required by § 477 of the code. Said motion was heard at the October Term, 1870. On the hearing it was shown that the summons in the case of *Grant & Prest v. Hammill* was served on the return-day thereof, and not before, and that the judgment therein was rendered by default, no appearance having been made by Hammill. The court made a special finding of the facts, and found as a conclusion of law, that the defendants herein, *Grant*

*& Prest*, were entitled to recover a judgment against *Armstrong* for $855.95, the amount of said execution and interest. The plaintiff *Armstrong* excepted to the findings of fact and the conclusions of law, and moved to set the same aside; the motion was overruled, exceptions taken, and judgment rendered; and Armstrong now brings the case here by petition in error.

*Stillings & Fenlon*, for plaintiff in error:

1. The judgment against Hammill was absolutely void. Sec. 64, civil code provides that service of summons shall be "at any time *before* the return-day." This may be cured by appearance of defendant, as in *Schaffner v. Barry*, 7 Ohio, 309; but here there was no appearance, the judgment being rendered by default. 16 Ohio St., 284. The judgment being *void* it cannot be the basis for proceedings to amerce.

2. This proceeding to amerce was had under § 472 of the code which authorizes proceedings against *a sheriff*, but does not in words, or by implication, authorize such proceedings against an *ex-sheriff*. The proceeding is very summary, and penal in its nature; to be strictly construed, and not extended beyond its express terms. Amercement is defined to be "a penalty imposed by the court upon the officers of the court * * * for neglect in the discharge of their official duties." Taylor's Law Glossary, 28.

At the time these proceedings were commenced the plaintiff herein was not "an officer of the court;" was a non-resident of the county, was served only with notice of a motion in a cause to which he was not a party; he had not the benefit of summons, pleading, trial by jury, or any of the safeguards provided by law for citizens "not officers of the court." Great strictness is required

in proceedings to amerce, as in other matters penal in their nature. 10 Ohio, 45; 3 Ohio St., 522; 12 Ohio, 220; Gwynne on Sheriffs, 581.

3. The findings of fact do not authorize the conclusion of law. For what may a sheriff be amerced? 1st, for "refusing or neglecting to execute any writ of execution to him directed which has come to his hands;" or 2d, for "neglecting to return any writ of execution to the proper court, on or before the return-day thereof." These are the two grounds specified in the motion.

As to these the court finds as matter of fact that on the 6th of December, 1869, the writ came to hands of Armstrong, then sheriff of Wyandotte county; that he never executed or returned said execution to the court from which it issued; and further, that he never entered the same upon the records of Wyandotte county; but as this last is not a ground specified in the statute for amercement, the finding is immaterial.

The court further finds that on the 10th of January, 1870, Armstrong ceased to be sheriff of Wyandotte county. Sec. 108, ch. 25, Gen. Stat., p. 279, provides that "when a new sheriff shall be elected, and shall have been qualified as required by law, the former sheriff shall, upon demand, deliver to him * * all writs, processes, orders and other papers belonging to such office and in his possession," except as provided in § 109, that sheriffs may execute and return all such writs and processes as shall be in their hands at the expiration of their office, * * which they shall have begun to execute by service, levy or collection of money thereon."

Now, the finding of the court as to this point is, that Armstrong never executed or returned said execution to said court. He had sixty days from the 6th December, to return the writ, and was not bound, if he had remained

sheriff, to return the same till that time was up.   If he had begun to execute the writ, he might fully execute it and return it—but if not, and there is no finding on that question, then under § 108, p. 279, it was the duty of Armstrong "to deliver to the new sheriff all writs in his possession."   There is no finding that this was not done.   The presumption of the law is, that all officers do their duty.

*Hurd & Birnie*, for defendants in error :

1. Whether the summons in *Grant & Prest v. Hammill* was regularly served or not, is a matter into which Armstrong cannot inquire.   Hammill alone could complain.

Defendants in error had a valid and subsisting judgment, in full force, and unsatisfied; and while it thus remains in force and unreversed its validity cannot be inquired into in any collateral proceeding.   *Brown v. Nichols*, 42 N. Y., 26; 37 N. Y., 502; 9 Paige, 436; 6 Johns., 296 ; 5 Duer, 643.

The plaintiff in error cannot shield himself for neglect and nonfeasence by showing error in the original judgment.   The sheriff cannot look behind the writ.   The execution was regular on its face.   It was issued by competent authority, and would have protected him in any act necessary to enforce it.   Gwynne on Sheriffs, 594 ; *Duncan v. Drakely*, 10 Ohio, 49.

2. The proceedings against the plaintiff on the motion to amerce were in all respects regular and in conformity with the statute.   He was personally served with notice of the motion more than fifteen days before the hearing of the same.   Civil Code, § 477.

Pleadings are not required and are not necessary.   " It was for his advantge to permit him to appear and urge anything and everything as a defense, without being con-

fined to a single point in a plea, or answer, or issue."
*Wadsworth v. Parsons*, 6 Ohio, 452.

3. By statute, a sheriff continues to be the officer of
the court, after the expiration of his office, for the pur-
pose of completing the execution of writs then in his
hands: § 109, ch. 25, Gen. Stat.

And his liability for neglect and dereliction of duty
continues unchanged. And he may be amerced after he
is out of office. *Huslick v. Allen, late Sheriff*, 1 Cox, N.
J., 169; *Graham, late Sheriff, v. Newton*, 12 Ohio, 210.

4. The word *execute* as applied to executions, means
" to fulfill or complete the execution: " 2 Green, N. J.,
350. This necessarily includes each and every duty im-
posed by law upon a sheriff in the execution of a writ
of execution.

The testimony shows that Armstrong admitted that he
" had never levied on Hammill's property; hadn't done
anything with the execution." It shows the most gross
neglect of duty, a total disregard of the rights and inter-
est of the judgment creditors, and the utmost contempt
and disregard for the authority of the court that issued
the execution. He neither attempted to execute the writ
himself, nor to deliver it to his successor in office, nor to
return it to the court. A more flagrant breach of duty
could hardly be imagined. He would do nothing him-
self, neither would he return the writ so that the defen-
ants could issue another execution, and take steps toward
the collection of their judgment.

The opinion of the court was delivered by

VALENTINE, J. : The proceeding in the court below, of
which the plaintiff in error complains, was an order of
the district court of Leavenworth county amercing him

as sheriff of Wyandotte county.   The plaintiff in error was charged with neglecting and refusing to execute a a writ of execution directed to him from the district court of Leavenworth county; and he was also charged with neglecting and refusing to return said writ to said court. It appears from the record in this case that the plaintiff in error had once been sheriff of Wyandotte county, but that his term of office had expired before this proceeding to amerce him was commenced; and at no time during the prosecution of this proceeding was he sheriff of Wyandotte county.   He therefore, for that reason claims, that he could not be amerced.   He claims that a sheriff except one in office is liable to that kind of prosecution; for instance, he claims that a sheriff may, while in office, commit any official wrong whatever, and if he should be threatened with, or if he should apprehend any prosecution, by amercement, for the wrong, he could resign his office and thereby evade and escape the prosecution. We do not think that such is the law.   *Huslick v. Allen,* 1 Cox (N. J.,) 168; 169; *Graham v. Newton,* 12 Ohio, 210.   Where a proper case is made, a sheriff whose term of office has expired may undoubtedly be amerced, as well as one who is still in office; but of course the amercement must be for some official misconduct.

The said writ of execution was issued on a judgment in favor of the defendants in error, and against one John Hammill.   The service of the summons in the case in which this judgment was rendered was made on Hammill on the return-day of the summons, and not before, and the judgment was rendered against Hammill by default, no appearance having been made. The plaintiff in error therefore claims that the judgment was void because the summons was not served until the

1. A sheriff, whose term has expired may be amerced.

2. Judgment; irregular; who may attack.

return-day thereof. It is true that the service on Hammill was irregular; Gen. Stat., 642, § 64; *Dutton v. Hobson*, ante, p. 196; but the judgment was not for that reason void; it, at most, was only voidable, (*Meisse v. McCoy's Adm'r*, 17 Ohio St., 225,) and can be attacked by Hammill only, or by his legal representatives, and only by a direct proceeding instituted for that purpose. The sheriff has no right to raise any objection to such a service, or such a judgment. Shearman & Red. on Neg., 2d ed., § 528, and cases there cited; Gwynne on Sheriffs, 1st ed., 574, 581; *Duncan v. Drakely*, 10 Ohio, 45, 49. Said judgment is valid until set aside or reversed.

The said writ of execution was issued on the 6th day of December, 1869, and the sheriff had sixty days from that time in which to return it to the court from which it was issued: Gen. Stat., 720, § 469. He could not be compelled to return it before the end of the sixty days, and could not be held liable for any neglect or refusal to return the same before that time. Before the sixty days had elapsed, the said Armstrong ceased to be sheriff of Wyandotte county. His term of office as sheriff expired on the 10th day of January, 1870, but the said sixty days did not elapse until the 4th day of February, 1870. At the time that his term of office expired, the execution was still in his hands, but he had done nothing under it. He had made no levy under it, and had not even delivered it the clerk of the district court of Wyandotte county to be entered on the execution docket of that county; (Gen. Stat., 722, § 475.) He had not "begun to execute" the writ "by service, levy, or collection of money thereon," within the meaning of § 109 of the act relating to counties and county officers: ch. 25, Gen. Stat., 279. Then what was his duty with reference to said writ? As he had not com-

*— Duty and liability of sheriff discussed.*

menced to execute the writ while he was sheriff, he had no power to commence the execution of the same afterwards, and neither had he any power to return the writ to any court. Only one thing remained for him to do. It was his duty to deliver the writ, on demand, to his successor in office: Gen. Stat., 279, § 108. But he is not charged with failing or refusing to perform this duty; and if he was so charged, amercement is not the proper remedy; and neither is it shown that any demand was ever made for the writ. But he is charged with neglecting and refusing to execute the writ; and counsel for defendants in error seem to claim that the execution of a writ means, in such a case, the delivery of the same by the out-going sheriff to his successor. We do not think so. To execute a writ, means, to carry out the command of the writ. A sheriff commences to execute a writ of execution when he commences to levy upon the property of the judgment debtor, and not before. In this case the sheriff never commenced to execute the writ; and after his term of office expired he had no power to commence the execution of the same. From the foregoing we draw the following conclusions: *First:* As it never was the duty of the said sheriff either before or after his term of office expired, to return said writ to any court, therefore he cannot be amerced for failing or refusing to return the same to the district court of Leavenworth county. *Second:* As the said sheriff never had the power to execute or commence the execution of said writ after his term of office expired, therefore he cannot be amerced for failing or refusing to execute said writ after his term of office expired.

The next question, and one that is more difficult, is, whether the said sheriff is liable for neglecting or refus-

**3. Amercement; special circumstances to be shown in certain cases.** ing to execute said writ before his term of office expired, or for neglecting or refusing to commence the execution of the same before that time.   It is undoubtedly the duty of a sheriff to levy on the property of the judgment-debtor as soon as he conveniently can after receiving the writ; (Gen. Stat., 714, § 448;) but he is not bound to levy where the judgment-debtor has no property subject to an execution; nor on goods and chattels where the title to the same is doubtful, unless the judgment-creditor gives him an indemnity bond; (Gen. Stat., 715, § 449;) nor generally on real estate, unless the same is pointed out to him by the judgment-creditor; (Shear. & Red. on Neg., § 524; *Palmer v. Gallup*, 16 Conn., 555; *Betts v. Norris*, 15 Maine, 468;) and in no case is he required to exercise more than reasonable and ordinary diligence to discover property belonging to the judgment-debtor.   (Shear. & Red. on Neg., §§ 521, 522, 523, and cases cited.)   "Ordinarily the sheriff has until the return-day named in the writ or process within which to execute it; " (Shear. & Red. on Neg., § 521, and cases cited;) and if he does not serve the writ until the return-day, he will not be presumed to have been negligent, unless there are special circumstances which show him to have been negligent. " If the plaintiff in the writ   *   *   *   directs an immediate service, the sheriff is bound to follow such directions, and on failure is answerable for the consequences : " (Shear. & Red. on Neg., § 251.)   Or, if the sheriff should have reasonable grounds to believe that if he did not immediately serve the writ, there would be danger of loss to the judgment-creditor from his delay, he would be bound to serve the writ immediately, or be answerable for the consequences.   There is always a strong presumption in favor of a public officer that he has performed the

duties of his office faithfully; (Shear. & Red. on Neg., § 169, and cases there cited;) and if any person should claim that an officer has not performed his duty, it will devolve upon such person to affirmatively show it.

In the case at bar, there was no evidence that tended to prove that the judgment-debtor had any personal property; and there was but very little evidence that he had any real estate. The evidence upon this subject is in a deposition of John M. Funk, and is as follows: "Mr. Armstrong about the month of December, 1869, told me he had received an execution from Hurd & Birnie in favor of Grant & Prest, of Leavenworth county, and against John Hammill, and asked me if I knew anything about his lots in Wyandotte City. He said he wanted to make a levy on his lots here, (at Wyandotte.) He said he was referred to me for a description of the lots. I told him I had the numbers of his lots in my office. I hadn't them with me. I told him I would give him the numbers at any time he would call at my office. * * * Afterwards I called upon Armstrong at the request of Hurd & Birnie, to find out what he had done with the execution in favor of Grant & Prest, and against Hammill. He said he had never levied on Hammill's property here; had not done anything with the execution. He said he had returned the execution to the parties who sent it to him." If this was any evidence that Hammill owned any property in Wyandotte county it was certainly very weak evidence. If Hammill owned any lots in Wyandotte City, what was his title? legal or equitable, absolute or conditional, incumbered or unincumbered? and were the lots subject to an execution, or were they his homestead, and exempt from execution? None of these questions are answered by the evidence. The presumption is that the sheriff did his duty, and it devolves

upon Grant & Prest to show that he did not. If Hammill had any property that was not exempt from execution, it devolved upon Grant & Prest to show it; otherwise it will be presumed that Hammill had no property which was subject to an execution. And in order to make the sheriff liable for not serving the writ within the thirty or thirty-five days within which he had the power to serve it, some special circumstances of negligence must be shown. This we think the plaintiffs below failed to do. They did not designate the property upon which they desired to have the sheriff to levy. The most that they did was to refer the sheriff to another person. The sheriff went to this other person and told him that " he wanted to make a levy " on Hammill's lots, but this other person could not then give a description of the lots. Was the sheriff required to call again? Was he culpably negligent for not calling again within the thirty or thirty-five days that he held the execution? Or had the plaintiffs themselves done enough on their part to make the sheriff culpably negligent for not levying within that time? Besides, it is not shown that Grant & Prest have lost anything on account of any failure of the sheriff to serve said writ before his term of office expired; and as we have already stated, in order to make a sheriff liable for not serving a writ on some day before the return-day, it is necessary to show some special circumstances of negligence; as that he was ordered to serve it, and neglected or refused; or, that some loss accrued on account of his neglect to serve the writ sooner.

We do not think that the court below was bound to make special findings on the determination of said motion. 4. Practice: motion; order. The action of the court in such a case is on a written motion, and not on pleadings; its determination is an order, and not a judgment; and

while, of course, it is necessary for the court to make mental findings, it is not necessary that these findings should be made a part of the record. The order is founded on, and stands or falls by the evidence; while a judgment is founded on, and must be sustained by the finding of the court, the verdict of a jury, or the report of a referee. The motion was heard on written evidence entirely, and hence we can examine the evidence and weigh it, just as intelligently as the court below could

The order of the court below, amercing said sheriff is reversed, and the case remanded for further proceedings.

All the Justices concurring.